UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Seth K.,[1]

        Plaintiff,

v.

Kilolo Kijakazi,
Acting Commissioner of Social Security,

        Defendant.

Court File No.  21-cv-76 (MJD) (LIB)

**REPORT & RECOMMENDATION**

Plaintiff, Seth K. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Acting Commissioner of Social Security ("Defendant") denying his application for disability benefits.  The matter is before the undersigned United States Magistrate Judge for disposition pursuant to 28 U.S.C. § 636 and Local Rules 7.2(a)(1).  This Court has jurisdiction over the claims pursuant to 42 U.S.C. § 405(g).

Both parties submitted cross-motions for summary judgment, and the Court took the matter under advisement on the parties' written submissions.  [Docket Nos. 28, 30].  For the reasons discussed herein, the Court **DENIES** Plaintiff's Motion for Summary Judgment, [Docket No. 28], and **GRANTS** Defendant's Motion for Summary Judgment.  [Docket No. 30].

**I. Procedural History**

On July 25, 2017, Plaintiff filed a Title II application for supplemental security income. (Tr. 10, 97).[2]  Plaintiff alleged that his disability began on July 25, 2017, and that his disability

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Order. Accordingly, where the Court refers to Plaintiff by his name only his first name and last initial are provided.

[2] Throughout this Order, the Court refers to the Administrative Record, [Docket No. 23], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 79 exhibits. (See Administrative Record [Docket No. 23). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.

was caused by impairments of "muscular dystrophy," "autism – PDD (pervasive development disorder)," "anxiety," "asthma," "depression," "obsessive compulsive disorder," "bulging discs," and "attention deficit disorder." (Tr. 98). The Acting Commissioner initially denied Plaintiff's present claims on November 14, 2017, and again, upon reconsideration, on January 22, 2018. (Tr. 137-148). On February 8, 2018, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 10, 149-151).

Administrative Law Judge Nicholas Grey (hereinafter "ALJ") conducted a hearing on October 10, 2019. (Tr. 10). Plaintiff testified at the hearing, along with an independent vocational expert, Michael Stern. (Tr. 10). On April 16, 2020, the ALJ conducted a supplemental hearing. (Tr. 10). On May 6, 2020, the ALJ issued a decision denying Plaintiff's request for supplemental security income. (Tr. 10-24). The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 24).

Thereafter, Plaintiff sought review of the decision by the Appeals Council. (Tr. 1-6). Subsequently, on November 16, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1). Accordingly, the ALJ's decision became the final decision of the Acting Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

On January 8, 2021, Plaintiff filed the present action. (Compl., [Docket No. 1]). Thereafter, both parties submitted cross-motions for summary judgment, and the Court took the matter under advisement on the written submissions. [Docket Nos. 28, 30].

## II. Standards of Review

### A. Administrative Law Judge's Five-Step Analysis

If a claimant's initial application for disability benefits is denied, he may request reconsideration of the decision. 20 C.F.R. §§ 404.907-404.909. A claimant who is dissatisfied

with the reconsidered decision may then obtain administrative review by an administrative law judge ("ALJ"). 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis. This analysis requires the ALJ to make a series of factual findings regarding the claimant's impairments, residual functional capacity, age, education, and work experience. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

### B. Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, he may request review by the Appeals Council; however, the Appeals Council need not grant that request for review. See 20 C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the Appeals Council's action. See 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. In this case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled. (Tr. 1-6).

**C. Judicial Review**

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps. However, judicial review of the Commissioner's decision to deny disability benefits is constrained to a determination of whether the decision is supported by substantial evidence in the record, as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007); Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision, the court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone

4

of choice.'" Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The claimant bears the burden under the Social Security Act of proving that he is disabled. See 20 C.F.R. § 404.1512(a); Whitman v. Colvin, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated he cannot perform prior work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

**III. Decision Under Review**

The ALJ made the following determinations during the five-step disability evaluation process. At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since July 25, 2017. (Tr. 12). This finding is not in dispute. The Court will refer to the period of time between the date Plaintiff last engaged in substantial gainful activity and the date through which the ALJ issued his decision denying Plaintiff's request for supplemental security income as "the adjudicated period."

At step two, the ALJ concluded that Plaintiff had the following severe impairments: generalized anxiety disorder; obsessive compulsive disorder (OCD); major depressive disorder; insomnia; autism spectrum disorder; attention deficit hyperactivity disorder (ADHD); cervical

5

degenerative disc disease; and hereditary neuropathy with liability to pressure palsises (HNPP). (Tr. 12). These findings are not in dispute.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13). Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met or medically equaled listings 1.04, 11.13, 12.04, 12.06, 12.10, and 12.11. (Tr. 13). Plaintiff does not challenge the ALJ's findings at step three.

At step four, the ALJ made the following RFC determination:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except he may lift 10 pounds occasionally and less than 10 pounds frequently (such as files and papers). He may stand or walk about 2 hours out of 8 and sit 6 hours out of 8, with customary breaks after hours 2, 4, and 6. He may occasionally climb stairs and ramps, but never ladders, ropes, or scaffolds. He may occasionally balance, stoop, crouch, kneel, and crawl, but only in 10-minute intervals. The claimant can frequently reach, handle, and finger. He may not perform firm gripping, such as opening jars or operating power tools, but has sufficient grip for doorknobs and control dials. He may perform simple tasks with only a few, predictable changes in daily work routine. He may have occasional interactions with coworkers and supervisors of a superficial nature, such as taking instructions, relaying information, and exchanging materials. Interactions with the general public should not be an assigned task[ ]. The claimant may not work with strict production requirements, such as assembly line or where coworkers are waiting on immediate outputs. He may work with a variable pace where outputs are measured on an hourly basis or less frequently.

(Tr. 15). Plaintiff challenges this RFC determination made by the ALJ.

In making this RFC determination, the ALJ, considering the record, as a whole, found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;" however, the ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical

evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." (Tr. 16). Plaintiff challenges this credibility finding by the ALJ.

The ALJ then found that Plaintiff had no past relevant work. (Tr. 22). Plaintiff does not challenge this finding.

Finally, at step five, the ALJ concluded that "[c]onsidering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." (Tr. 23). Relying upon testimony from independent vocational expert Michael Stern, ("IVE Stern"), the ALJ specifically found that, among the representative occupations, Plaintiff would be able to perform the requirements of document preparer (Dictionary of Occupational Titles No. 249.587-018) of which there are 35,000 positions in the national economy; addresser (Dictionary of Occupational Titles No. 209.587-010) of which there are 15,000 positions in the national economy; and tube operator (Dictionary of Occupational Titles No. 239.687-014) of which there are 5,000 positions in the national economy. (Tr. 23). Other than an implicit challenge based on Plaintiff's other challenges, Plaintiff does not directly challenge the ALJ's findings at step five.

Accordingly, the ALJ found that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period. (Tr. 24).

**IV. Analysis**

Plaintiff raises one general overarching issue on his appeal of the ALJ's decision: whether there is substantial evidence on the record, as a whole, to support the ALJ's RFC determination. (Plf.'s Mem., [Docket No. 29], at pp. 8-18). In support, Plaintiff asserts that the ALJ erred by improperly assessing the medical opinions of Dr. Stephen Smith, Dr. Jill Gettings, and Dr. Randal

7

Richardson.³  (Id. at pp. 18-24).  The Acting Commissioner contends that she is entitled to summary judgment, arguing that Plaintiff's arguments are unavailing, and that the ALJ's opinion is supported by substantial evidence in the record. (See Def.'s Mem. [Docket No. 31]).

"[A] treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  Dolph v. Barnhart, 308 F.3d 876, 878 (8th Cir. 2002) (internal quotation marks omitted).  However, a treating physician's opinion "do[es] not automatically control, since the record must be evaluated as a whole." Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995).

The Eighth Circuit has held that an ALJ may properly choose not to give controlling weight to the opinion of a treating physician opinion when it is based solely on a claimant's subjective reports, or when the opinion is inconsistent with the treating physician's own treatment notes. Papesh v. Colvin, 786 F.3d 1126, 1132 (8th Cir. 2015).  Even when a treating physician's opinion is not entitled to controlling weight, the opinion is typically entitled to substantial weight, and should not ordinarily be disregarded without good reason.  Miller v. Colvin, 784 F.3d 472, 477 (8th Cir. 2015).

However, an ALJ may properly choose to give the opinion of a treating physician no weight when it is inconsistent with the overall evidence in the medical record. Papesh, 786 F.3d at 1132. Further, "an ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions."

---

³ Plaintiff also argued that the ALJ did not have the constitutional authority to decide his claim in violation of the separation-of-powers doctrine.  (Plf.'s Mem., [Docket No. 29], at pp. 13-18).  However, Plaintiff withdrew this argument on January 3, 2022.  [Docket No. 33].  Accordingly, the Court has deemed this argument withdrawn.

8

Miller, 784 F.3d at 477 (quoting Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010)). A treating physician's opinion "on the issue(s) of the nature and severity" of an impairment is given controlling weight when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case. 20 C.F.R. § 404.1527(c)(2).

An ALJ may also discount or even disregard a treating physician's medical opinion and adopt the contrary medical opinion of a consulting physician, when the treating source's statements are conclusory, unsupported by medically acceptable clinical or diagnostic data, or when the ALJ's determination is justified by substantial evidence in the record, as a whole. See Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997); Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991).

In other words, the ALJ is not required to believe the opinion of a treating physician when, on balance, the medical evidence convinces her otherwise. See Wagner v. Astrue, 499 F.3d 842, 849 (8th Cir. 2007). Moreover, "opinions that a claimant is 'disabled' or 'unable to work' concern issues reserved to the Commissioner and are not the type of opinions which receive controlling weight." Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010) (citing Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005)); see also SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996) ("Giving controlling weight to [treating source] opinions would, in effect, confer upon the treating source the authority to make" disability determinations). When an ALJ chooses not to give controlling weight to the opinion of a treating physician, the regulations require that they explain their reasons for doing so. See 20 C.F.R. § 404.1527(c)(2).

On June 2, 2017, Dr. Stephen Smith completed a "Physical Medical Source Statement" form in which he offered opinions and information regarding Plaintiff's physical impairments (the "June 2017 Opinion"). (Tr. 370-375). In that check the box form, Dr. Smith provided that, among

9

other things, Plaintiff's "intermittent muscle paralysis" limited him from lifting and carrying on an occasional or frequent basis to less than 10 lbs. (Tr. 371). Dr. Smith also opined that Plaintiff's impairment limited him to sitting for about four hours and standing or walking for no more than two hours during an 8-hour day. (Tr. 371). Dr. Smith then indicated that, in order to relieve discomfort, Plaintiff could only sit for thirty minutes before changing positions; could only stand for twenty minutes before changing position; and would need to walk around every twenty minutes for five minutes each time. (Tr. 372). Dr. Smith also opined that, although Plaintiff could never climb ladders, he could "occasionally" twist, stoop (bend), crouch, climb stairs, rotate and flex his neck, and repetitively control his right and left foot. (Tr. 373). Dr. Smith also provided that, among other things, Plaintiff's "compression of nerves," which "cause[s] pain or numbness, for example in his fingers," affected his "reaching (including overhead), handling (gross manipulation), fingering (fine manipulation), feeling, and pushing/pulling," and more specifically, limited Plaintiff to occasional handling and fingering. (Tr. 373). Dr. Smith also checked boxes opining that Plaintiff's nerve compression and nerves could be affected by "temperature extremes." (Tr. 374). Lastly, Dr. Smith opined that Plaintiff's absences from work "depends on the demands at work," but would "[p]robably [be] frequently." (Tr. 374).

After discussing Dr. Smith's opinion form, the ALJ found that, beyond the lift, carry, and postural limitations, the opinion was "not particularly persuasive." (Tr. 21). In other words, the ALJ discounted Dr. Smith's opinion with respect to Plaintiff's sitting and manipulative limitations, specifically finding that, among other things, Plaintiff's testimony that he sits at a computer each day for an "extensive time (8 to 9 hours)" and can reportedly tolerate sitting for over sixty minutes did not support Dr. Smith's opinion that Plaintiff was limited to only 4 hours of sitting and occasional handling and fingering. (Tr. 21). This Court's review of the record as a whole indicates

10

that the ALJ's stated reasons for discounting the June 2017 Opinion is supported by substantial evidence.

The ALJ noted that the June 2017 Opinion was inconsistent with the record as a whole, and more specifically, inconsistent with Plaintiff's reported activities of daily activity, including sitting at a computer for approximately 8 to 9 hours. (Tr. 21). "The ALJ may reject the opinion of any medical expert where it is inconsistent with the medical record as a whole." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); see also Papesh, 786 F.3d at 1132. As observed by the ALJ, Plaintiff reported sitting at a computer for approximately 8 to 9 hours each day. (Tr. 21, 45-46). Plaintiff's medical record, including Dr. Smith's treatment notes, consistently reported the same. see e.g., Tr. 301, 382, 442 ("Spends most of time on the computer video gaming"); Tr. 368 ("Spends his days on the computer."); Tr. 403 ("He spends most of his time during the day playing video games, watching TV, or is on the computer"); Tr. 554 ("He is on the computer all day. He plays different games."); Tr. 662 ("Ongoing difficulty with concentration, but most days are spent on his computer"); Tr. 667 ("Active on computer in virtual games"); Tr. 705 ("[H]ome daily now, interacts on computer, gaming and reading blogs.").

Other records also conflict with Dr. Smith's opinion. For example, while Plaintiff reported some weakness, pain, and intermittent numbness to his left hand, (Tr. 368, 607, 608, 627), Plaintiff's physical examinations documented normal motor strength in his extremities, normal finger movements, normal reflexes, and normal range of motion. (Tr. 369, 470, 521, 607, 627). As the ALJ noted, Plaintiff was seen by Dr. John Mullan in May 2019 for neck pain and bilateral shoulder pain and reported feeling "subjectively weak in the left upper extremity," but his cervical range of motion was "only very mildly limited," and his motor strength was 5/5 in all muscle groups in both upper extremities, including the intrinsic muscles of the hands. (Tr. 684-685). After

11

reviewing the results of Plaintiff's MRI of his cervical spine and an EMG exam, Dr. Mullan explained that he did not see "a good indication for cervical surgery" and recommended that treatment be observation only. (Tr. 685). Plaintiff's physical therapy notes also demonstrate that he was progressing well towards his goals, but he ultimately discontinued physical therapy resulting in being discharged. (Tr. 630-631); see Turpin v. Colvin, 750 F.3d 989, 993 (8th Cir. 2014) ("An ALJ . . . may discredit complaints . . . if the claimant does not seek regular medical treatment."); Delores J. on behalf of Q.J.J. v. Saul, No. 18-cv-1104 (HB), 2019 WL 3891088, at *12 n.11 (D. Minn. Aug. 19, 2019) ("[N]oncompliance with any prescribed treatment, including attendance at therapy, may also support the ALJ's conclusion that claimant is not disabled." (emphasis in original)). Plaintiff's pain symptoms were also reportedly improving with medication. (Tr. 482, 515, 626); see Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) (quoting Brace v. Astrue, 578 F.3d 882, 885 (8th Cir. 2009)) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."); see also Hill v. Colvin, 753 F.3d 798, 800 (8th Cir. 2014).

Furthermore, Dr. Smith's four-page "check the box opinion" form is conclusory. "[A] conclusory checkbox form has little evidentiary value when it 'cites no medical evidence, and provides little to no elaboration.'" Anderson v. Astrue, 696 F.3d 790, 794 (8th Cir. 2012) (quoting Wildman, 596 F.3d at 964). Here, as noted above, the ALJ only took issue with Dr. Smith's opinion as to Plaintiff's sitting and manipulative limitations, reasoning that such limitations were not supported by Plaintiff's reported activities of daily activity, including sitting at a computer for approximately 8 to 9 hours. (Tr. 21, 45-46); see e.g., Tr. 382, 442, 403, 554, 662 667, 705. Nevertheless, the June 2017 Opinion only consisted entirely of vague, conclusory statements, checked boxes, and fill-in-the-blank answers. Indeed, although the record contained Dr. Smith's

treatment notes, the contents of his notes are not referenced in the June 2017 Opinion, nor does the June 2017 Opinion contain any opinion evidence regarding Plaintiff's physical limitations. It is well established that the ALJ may properly discount the opinion of a treating provider that is conclusory or unsupported and contradicted by other evidence in the record. Rogers, 118 F.3d at 602; Ghant, 930 F.2d at 639. Such is the case here. Therefore, it was not error for the ALJ to assign little weight to Dr. Smith's June 2017 conclusory opinion as to Plaintiff's sitting and manipulative limitations; this was within the available zone of choice. Robinson, 956 F.2d at 838; Bradley, 528 F.3d at 1115.

     Plaintiff asserts that a "great deal of medical evidence" supports Dr. Smith's manipulative limitations. See Plf.'s Mem., [Docket No. 29], at p. 11 (citing Tr. 368, 467, 469, 470, 479). In making this argument, however, Plaintiff merely highlights selective evidence he believes favorable to his claim, and he asks this Court to reevaluate said evidence to reach a different conclusion than that of the ALJ, who considered that same evidence. Plaintiff's argument lacks any assertion that the ALJ failed to consider the evidence to which Plaintiff now points. Indeed, Plaintiff does not seem to argue that there is any medical evidence in the record that the ALJ failed to consider that shows that Plaintiff could not tolerate sitting for more than four hours and could only occasionally finger and handle.

     The same can be said for Dr. Randal Richardson's letter, dated March 21, 2019, which offered an opinion regarding Plaintiff's physical impairments in the form of a "To Whom it May Concern" letter (the "March 2019 Letter"). In the March 2019 Letter, Dr. Richardson stated in a conclusory manner that it was his belief that Plaintiff "would fall into the category of disabled," based on Plaintiff's diagnosis of autism spectrum disorder and his diagnosis of HNPP, which in the context of "repetitive motion/activity . . . [and] prolonged sitting or standing," causes

"significant musculoskeletal pain and discomfort." (Tr. 552). Dr. Richardson also opined that, while there are circumstances where individuals "are able to be gainfully employed in occupations that require desk work without concern for repetitive use," Plaintiff's HNPP and autism spectrum disorder would render him disabled. (Tr. 552). Beyond this, Dr. Richardson provided no elaboration or explanation in the March 2019 Letter.

The ALJ considered Dr. Richardson's March 2019 Letter and found the opinion only "partially persuasive" with respect to limitations to desk work without repetitive use and social interactions. (Tr. 21). However, as observed by the ALJ, Dr. Richardson's conclusion that Plaintiff is disabled is in effect an opinion that Plaintiff cannot work, which is a decision reserved for the ALJ. See, e.g., Vossen, 612 F.3d at 1015; Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir. 2009); Daniel v. Saul, No. 17-cv-4322 (ECW), 2019 WL 4306353, at *9 (D. Minn. Sept. 11, 2019). Consequently, that portion of the March 2019 Letter "gets no deference because it invades the province of the Commissioner to make the ultimate disability determination." Engquist v. Berryhill, No. 16-cv-3951 (TNL), 2018 WL 1413460, at *21 (D. Minn. Mar. 21, 2018) (quoting House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007)).

Plaintiff appears to argue that the ALJ improperly discredited Dr. Richardson's opinion that Plaintiff suffers from "significant musculoskeletal pain and discomfort associated with physical activity." (Plf.'s Mem., [Docket No. 29], at p. 12). However, in support of this argument, Plaintiff merely restates Dr. Richardson's March 2019 Letter describing Plaintiff as being disabled due to his combined diagnosis of autism spectrum disorder and HNPP. Id.; Tr. 599. Similar to the June 2017 Opinion, as discussed, supra, Dr. Richardson's March 2019 Letter is inconsistent with the record as a whole in light of, among other things, Plaintiff's reported daily activities of sitting at a computer for approximately 8 to 9 hours a day; and documented physical examinations

14

where Plaintiff reported some weakness, pain, and numbness to his left hand, but was observed to have normal motor strength, reflexes, and range of motion. Furthermore, similar to Dr. Smith's June 2017 Opinion, the Court notes that Dr. Richardson's March 2019 Letter is also conclusory. (Tr. 552). See Anderson, 696 F.3d at 794; Rogers, 118 F.3d at 602; Ghant, 930 F.2d at 639.

Plaintiff is essentially asking this Court to reweigh the whole of the medical evidence and to come to a different conclusion than the ALJ, which this the court cannot do. See Milam, 794 F.3d at 983; Woolf, 3 F.3d at 1213. To the extent Plaintiff argues that there was also substantial evidence in the record that might have supported giving Dr. Smith or Dr. Richardson's opinions more weight, this Court may not reverse the ALJ simply because substantial evidence exists to support an opposite conclusion. See Milam, 794 F.3d at 983. Nor can this Court substitute its own judgment or findings of fact for those of the ALJ. See Woolf, 3 F.3d at 1213. The Court "must consider evidence that both supports and detracts from the ALJ's decision," and it "must affirm the denial of benefits if 'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings.'" See Milam, 794 F.3d at 983 (citations omitted) (emphasis added). Such is the present case now before this Court.

Therefore, this Court finds that the ALJ's decision to discount Dr. Smith and Dr. Richardson's opinions was supported by substantial evidence in the record.

As for Dr. Jill Gettings' January 25, 2019, "To Whom it May Concern" letter (the "January 2019 Letter"), Plaintiff does not challenge the weight given to her opinion by the ALJ. Rather, Plaintiff contends that, in finding her opinion "generally persuasive," the ALJ failed to include in the RFC a limitation that Plaintiff must frequently change positions, as opined by Dr. Gettings, and failed to explain generally how Dr. Gettings' opinion was being accommodated for in the RFC. (Plf.'s Mem., [Docket No. 29], at p. 11). The Court finds this argument unpersuasive.

"A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence." McCoy v. Astrue, 648 F.3d 605, 614 (8th Cir. 2011); accord, 20 C.F.R. § 404.1545(a)(1). "A disability claimant has the burden to establish h[er] RFC." Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." Id. at 591. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of a claimant's ability to function in the workplace. However, there is no requirement that an RFC finding be supported by a specific medical opinion." Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016). "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." Perks v. Astrue, 687 F.3d 1086, 1092 (8th Cir. 2012).

Dr. Gettings' January 2019 Letter provided that, while Plaintiff is able to stoop, get back up, and bend over, he should not be asked to lift any item weighing more than 10 pounds while doing so. (Tr. 551). Further, Plaintiff should not be asked to stay in a stooping position, should not be asked to lift or carry any items weighing more than 10 pounds to avoid overly straining his muscles, and should not be kneeling for longer than 10-15 minutes to avoid risk of nerve compression and injury. (Tr. 551). Dr. Gettings further provided that Plaintiff can sit in an ergonomically appropriate chair or stand some of the time but should be allowed to take breaks or change positions frequently. (Tr. 551). Plaintiff should also avoid doing things that require a tight grip or significant force, such as opening jars, and "particular attention" should be paid to the ergonomics of any workstation to avoid pressure on nerves. (Tr. 551). Dr. Gettings also provided that, while Plaintiff should be able to work a full-eight-hour day with an ergonomic workstation,

16

he may need to work "1/2 time to start" because he would likely fatigue early or have trouble with tasks requiring prolonged attention. (Tr. 551). Lastly, Dr. Gettings opined that, given his neurological condition, Plaintiff could develop patchy numbness and weakness with daily activity, which would require some time resolve; that his neurological condition is chronic and not expected to improve over time; and that it is unclear how long Plaintiff would be able to sustain employment. (Tr. 551).

In making his RFC finding, the ALJ found the limitations opined by Dr. Gettings' January 2019 Letter "generally persuasive," specifically discounting the portion of the opinion where Plaintiff was limited to "1/2 time to start" and the requirement that Plaintiff have an ergonomic workstation. (Tr. 20). The ALJ then included in Plaintiff's RFC a limitation to, among other things, "lift[ing] 10 pounds occasionally and less than 10 pounds frequently (such as files and papers)"; "standing or walking about 2 hours out of 8 and sit[ting] 6 hours out of 8, with customary breaks after hours 2, 4, and 6"; "occasional[ ] balanc[ing], stoop[ing], crouch[ing], kneel[ing], and crawl[ing], but only in 10-minute intervals"; and "not perform[ing] firm gripping, such as opening jars or operating power tools, but has sufficient grip for doorknobs and control dials." (Tr. 15).[4] Therefore, the Court finds that the ALJ did include the limitations identified by Dr. Gettings.

Plaintiff specifically takes issue with the ALJ not including in his RFC a limitation that he must frequently change positions. However, there is no indication that the ALJ afforded Dr. Gettings' January 2019 Letter "significant weight"—the ALJ simply provided that her opinion was "generally persuasive." Therefore, because there is no indication that Dr. Gettings' opinion was afforded controlling weight, the ALJ was not required to include in the RFC <u>every</u> limitation

---

[4] The RFC requirements for customary breaks every 2 hours; only occasionally balancing stooping, etc., in maximum intervals of 10 minutes; and maximum intervals for continuous standing, walking or sitting during an 8 hour work day all necessarily involve regular changes of position during the work shift.

she described.  See Hensley, 829 F.3d at 931-32 (noting that there is no requirement that RFC findings be supported by specific medical opinion).  Plaintiff does not cite to any authority that the phrase "generally persuasive" has the equivalent heightened evidentiary weight which would require the ALJ to consider only her opinion when determining the RFC.  See Jacob P. v. Saul, No. 19-CV-3078-KMM, 2021 WL 352416, at *4 (D. Minn. Feb. 2, 2021) ("the Court is unaware of any case that has elevated an opinion described as 'persuasive' and 'consistent with the record' to a functionally controlling edict.").

To the extent Plaintiff argues that the ALJ erred by not explaining generally how Dr. Gettings' opinion was being accommodated for in the RFC, the Court is less persuaded.  There is no requirement that the ALJ's findings must mirror a particular form or opinion.  See Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) (holding the ALJ is not required to rely entirely on a particular physician's opinion).  Here, the ALJ reviewed and discussed at length the evidence in the record concerning Plaintiff's physical function, including Dr. Gettings' observations during a November 2018 examination where Plaintiff's gait was symmetric, he had no pain with range of motion, his muscle tone was normal, and he could move his arms and legs symmetrically, as well as, Plaintiff's reported daily activities, which included playing video games at a computer for 8 to 9 hours daily.  (Tr. 16-17).  The ALJ observed that Plaintiff's reported pain to his shoulders, wrists, and tailbone improved with medication, and although he was progressing well towards his goals in physical therapy, he was ultimately discharged because he did not attend further sessions.  (Tr. 17).  Viewed as a whole, substantial evidence on the record supports the RFC determination with respect to Plaintiff's physical function.

Plaintiff's argument that the ALJ should have incorporated a separate, specific limitation that he must frequently change positions into the RFC is less of an argument that the RFC failed

18

to consider the restriction altogether, and more of an argument that the RFC finding should have been more restrictive.  However, as already discussed above, Plaintiff is essentially asking the Court to independently re-weigh the evidence that the ALJ considered, and then substitute its own conclusions over those of the ALJ; this the Court cannot do under the applicable standard of review. Milam, 794 F.3d at 983; Woolf, 3 F.3d at 1213.

Therefore, this Court finds that the ALJ did not err in assessing Dr. Gettings' opinion in formulating the RFC in light of the record as a whole.

## V. Conclusion

The Court's review of the record, as a whole, indicates that the ultimate decision that Plaintiff was not disabled as defined by the Social Security Administration Act during the adjudicated period was supported by substantial evidence in the record.

Specifically, on the Court's review of the record, as a whole, the ALJ's decision to discount Plaintiff's subjective complaints, his RFC determination, and his decision that jobs existed in significant numbers in the national economy, which Plaintiff could perform within the RFC determination, were each supported by substantial evidence in the record.

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff's Motion for Summary Judgment, [Docket No. 28], be **DENIED**; and

2. Defendant's Motion for Summary Judgment, [Docket No. 30], be **GRANTED**.

Dated:  July 27, 2022

s/Leo I. Brisbois
Hon. Leo I. Brisbois
United States Magistrate Judge

**NOTICE**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).